UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

VICKI HALIBURTON,

       Plaintiff,

v.                                                                    Civil Action No. 3:07cv622

FOOD LION, LLC,

       Defendant.

## MEMORANDUM OPINION

The Plaintiff, Vicki Haliburton, filed a Complaint in the Circuit Court for the City of

Richmond, alleging that she sustained injuries on the premises of Defendant Food Lion, LLC's

("Food Lion") store in Midlothian, Virginia.  Food Lion, a North Carolina corporation with its

principal place of business in Salisbury, North Carolina, removed the suit to this Court pursuant

to 28 U.S.C. § 1441, and the parties consented to the jurisdiction of a magistrate judge pursuant

to 28 U.S.C. § 636.  Food Lion filed a Motion for Summary Judgment, arguing that Haliburton

fails to establish that Food Lion had notice of the hazardous condition that caused Haliburton's

fall.  (Docket No. 23.)  Haliburton responded, asserting that Food Lion had constructive notice

and that the Court should grant her a spoliation of evidence instruction.  Food Lion filed a reply

and the Court held a hearing on the matter.  Accordingly, the matter is ripe for adjudication.

## I.  Standard of Review

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record

as a whole and in the light most favorable to the nonmoving party, determines that there exists no

genuine issue of material fact and that the moving party is entitled to judgment as a matter of

law.  *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts illustrating genuine issues for trial. *Celotex*, 477 U.S. at 322-24.  These facts must be presented in the form of exhibits and sworn affidavits.  Fed. R. Civ. P. 56(c).

A court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.  *Anderson*, 477 U.S. at 255.  Whether an inference is reasonable must be considered in conjunction with competing inferences to the contrary.  *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 818 (4th Cir. 1995).  Nonetheless, the nonmoving "party is entitled to have 'the credibility of his evidence as forecast assumed.'" *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (*quoting Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).  Ultimately, the court must adhere to the affirmative obligation to bar factually unsupportable claims from proceeding to trial.  *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (*citing Celotex*, 477 U.S. at 323-24).

## II.  Facts

On February 23, 2005, Haliburton visited a Food Lion grocery store in Midlothian, Virginia.  While shopping in the store at approximately 5:45 p.m., Haliburton walked down the aisle that contained toothpaste, mouthwash, and other similar items.  As she walked down this aisle, Haliburton slipped and fell on a foreign substance that smelled like hair shampoo or conditioner.  Haliburton was holding onto her grocery cart and it fell on top of her.  After the fall, Haliburton noticed a slippery wet substance on the floor.  Haliburton asserts that the foreign

substance "had some gunky, scumy looking stuff on it" and that the substance got on her hair, hands, and clothing.  (Haliburton Dep. 22:21-22.)  The foreign substance was white, and approximately four inches (4") by four inches (4") in size, with two (2) smaller spots approximately fifteen feet (15') away.  There were no notices or warnings posted in the area.

Reginald L. Jones, who at the time was the Assistant Store Manager of the Food Lion store where the incident occurred, performed a "store walk" at sometime between 3:45 p.m. and 4:00 p.m. on February 23, 2005.  (Jones Aff. ¶ 3.)  Jones maintains that he did not see any slippery substance on the floor of the aisle where the incident occurred during the store walk. Jones also maintains that Food Lion was unaware that the substance was on the floor before the incident, and is unaware of how long the foreign substance was on the floor before the incident.

Jones investigated the incident and he or another Food Lion employee completed a "General Liability Claims Notice to Counsel Form."  (Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. 1 ("Claims Notice Form").) The Claims Notice Form states: "*** After the customer leaves, take a photograph of the area. ***"  (Claims Notice Form 4.)  It also states: "! ! ! If your store has surveillance cameras ! ! !  Pull your surveillance tape(s), label it with the customer's name, store number, and date of incident and send it to Risk Management.  If photographs were taken, mail them to the Risk Management Department labeled as above."  (Claims Notice Form 5.)  The Claims Notice Form indicates that Haliburton did not request medical attention.  After the incident, Haliburton continued shopping and left the store without any assistance.

### III.  Discussion

A court exercising diversity jurisdiction applies the substantive law of the forum state.

*Erie R.R. v. Tompkins*, 304 U.S. 64, 78-79 (1938); *Cole v. Food Lion, L.L.C.*, 370 F. Supp. 2d

434, 436 (E.D. Va. 2005).  In Virginia, a claim of negligence requires "'proof that the defendant

breached some duty which it owed the plaintiff, and caused, by such breach, [the] injury.'"  *Cole*,

370 F. Supp. 2d at 439 (*quoting Colonial Stores Inc. v. Pulley*, 125 S.E.2d 188, 189 (Va. 1962)).

The standard for liability in slip and fall cases is well established:

> The [store owner] owed the [customer] the duty to exercise ordinary care toward
> her as its invitee upon its premises.  In carrying out this duty it was required to
> have the premises in a reasonably safe condition for her visit; to remove, within a
> reasonable time, foreign objects from its floors which it may have placed there or
> which it knew, or should have known, that other persons had placed there; to warn
> the [customer] of the unsafe condition if it was unknown to her, but was, or
> should have been, known to the [store owner].

*Winn-Dixie Stores, Inc. v. Parker*, 396 S.E.2d 649, 650 (Va. 1990) (*quoting Pulley*, 125 S.E.2d

at 190).

To establish a prima facie case of premises liability, the plaintiff must show an unsafe

condition, and must prove "'*why* and *how* the incident happened'; 'if the cause of the event is left

to conjecture, guess, or random judgment, the plaintiff cannot recover.'" *Hodge v. Wal-Mart*

*Stores, Inc.*, 360 F.3d 446, 451 (4th Cir. 2004) (emphasis in original) (*quoting Town of West*

*Point v. Evans*, 299 S.E.2d 349, 351 (Va. 1983)).  Where a plaintiff lacks evidence as to why an

injury occurred, he or she may present evidence of the defendant's actual or constructive notice.

*Id.* at 452.

A.      **Actual Notice**

Haliburton has not established that Food Lion had actual notice of the unsafe condition.

Jones maintains that on February 23, 2005, he performed a store walk at 3:45 p.m. and, at that

time, did not observe any foreign substance on the floor of the aisle where Haliburton slipped.

Having set forth no evidence of actual notice, Haliburton must establish Food Lion's negligence

through a showing of constructive notice.

B.      **Constructive Notice**

Under the theory of constructive notice, the condition must pose a foreseeable risk of

danger in order for knowledge of that danger to be imputed to the owner of the premises.  *Id.*  A

plaintiff may prove constructive notice by introducing "evidence that the defect was noticeable

and had existed for a sufficient length of time to charge its possessor with notice of its defective

condition."  *Grim v. Rahe, Inc.*, 434 S.E.2d 888, 890 (Va. 1993).  A prima facie case requires

evidence of when an unsafe condition developed.[1]  *Id.*

---

[1] Virginia law distinguishes between cases where a plaintiff alleges negligence from a
defendant's "affirmative conduct," and cases where a plaintiff alleges negligence from a
defendant's "passive conduct."  *See Ashby v. Faison & Assocs., Inc.*, 440 S.E.2d 603, 605 (Va.
1994).  Allegations of "affirmative conduct" involve cases in which a defendant was the
"genesis" of the dangerous condition.  *Goehler v. Wal-Mart Stores, Inc.*, No. 99-2057, 2000 WL
1161700, at *2 (4th Cir. Aug. 17, 2000).  In "affirmative conduct" cases, notice is found where
"'an ordinarily prudent person, given the facts and circumstances [the defendant] knew or should
have known, could have foreseen the risk of danger resulting from such circumstances.'"  *Id.*
(*citing Memco Stores, Inc. v. Yeatman*, 348 S.E.2d 228, 230 (Va. 1986)).  In addition, "the
foreseeability of the danger . . . [is] the relevant question for [a] jury to consider in determining
whether [a] defendant [has] been negligent."  *O'Brien v. Everfast, Inc.*, 491 S.E.2d 712, 715 (Va.
1997).
    In this case, Haliburton alleges that Food Lion's passive conduct in failing to clean the
spill caused the dangerous condition.  Thus, Haliburton's reference to *Memco Stores, Inc. v.
Yeatman* and *Goehler v. Wal-Mart Stores, Inc.*, cases involving a defendant's "affirmative
conduct," do not persuade the Court in its consideration of whether Food Lion had constructive
notice of the foreign substance.

Under Virginia law, evidence about the appearance of the spill cannot establish when the

spill occurred.[2] *See Woods v. Wal-Mart Stores, Inc.*, No. 3:05 CV 048, 2005 WL 2563178, at *3

(E.D. Va. Oct. 12, 2005) (Dohnal, J.) ("Plaintiff's contention that the spill appeared dirty, drying,

and had tracks running through it is not enough under Virginia law to establish when the spill

occurred."); *Great Atl. & Pac. Tea Co. v. Berry*, 128 S.E.2d 311, 313-14 (Va. 1962) (rejecting "a

liberal expansion of the doctrine of 'constructive notice'" that allows a plaintiff to establish how

long a foreign substance was on a floor by its description).  Although Haliburton offers her

opinion about what the substance looked like, she presents no additional evidence to establish

---

[2] Haliburton unsuccessfully attempts to offer her lay opinion under Federal Rule of Evidence 701 as to the duration of time the substance had been on the floor.  As to lay opinion testimony, Federal Rule of Evidence 701 provides that such testimony is admissible only when it is limited to perceptions that are "rationally based," it is helpful to understand the witness's testimony on a fact, and it is "not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701.

Haliburton asserts that the texture of the foreign substance on which she slipped "seemed like it had to be there at least 15 minutes or more."  (Haliburton Dep. 23:18-19.)  Haliburton concedes that she did not see the substance spill on the floor and that she cannot be sure how long the foreign substance was on the floor.  Haliburton maintains that the foreign substance had "a gunky, scumy type thing to it . . . . It wasn't dripping wet.  It was kind of gooey, nasty." (Haliburton Dep. 23:20-23.)  In addition, Haliburton states: "I could see that the substance had a thin crust on top . . . ."  (Haliburton Aff.)  She maintains that the foreign substance was on the floor for more than fifteen (15) or twenty (20) minutes based on her personal, daily experience using similar products.

Insufficient foundation exists to permit Haliburton's lay opinion about how long the substance was on the floor. *See Sandow-Pajewski v. Busch Entertainment Corp.*, 55 F. Supp. 2d 422, 428 (E.D. Va. 1999) (excluding lay opinion about whether a wheelchair ramp was negligently designed because the witnesses had "no reliable basis" and did not "establish[] any foundation for their testimony").  Although she maintains that she is familiar with the substance, she is not clear whether the substance is shampoo, conditioner, or lotion, and she does not present any evidence that she observed this type of substance on this type of floor or at the temperature and environment of Food Lion's store. *Cf. Smithers v. C & G Custom Module Hauling*, 172 F. Supp. 2d 765, 776-77 (E.D. Va. 2000) (Dohnal, J.) (permitting a plaintiff to offer lay opinion about the speed of the vehicle that struck him because he personally observed the entire accident).

when the spill occurred.  In fact, Haliburton herself was not aware of the substance before she

fell.  *See Ashby*, 440 S.E.2d at 605 (noting that no one, including the plaintiff, knew of the

dangerous condition beforehand and thus, the plaintiff failed to establish actual or constructive

notice).  It is just as likely that the substance was spilled on the floor moments before Haliburton

fell, as it is that it was spilled up to fifteen minutes before.  *See Hodge*, 360 F.3d at 454; *Winn-*

*Dixie Stores, Inc.,* 396 S.E.2d at 651; *see also Grim*, 434 S.E.2d at 890 (refusing to impute

knowledge where dangerous condition could have been created only minutes before injury).

Absent evidence of when the unsafe condition was created, Haliburton cannot establish that a

sufficient amount of time passed to provide Food Lion constructive notice of the condition,

which is a required component of her prima facie case.  *See Hodge*, 360 F.3d at 454.

**C.**     **Spoliation of Evidence**

Haliburton argues that this Court should find that the spoliation of evidence occurred in

this case because Food Lion did not take a photograph of the scene of the incident, and because

Food Lion did not preserve the surveillance videotape of the scene of the incident.  Haliburton

asserts that because Food Lion did not preserve this evidence, the Court should presume that the

videotape and photograph would have established that the foreign substance was on the floor for

a substantial period of time to impute constructive notice.

"The spoliation of evidence rule allows the drawing of an adverse inference against a

party whose intentional conduct causes not just the destruction of evidence . . . but also against

one who fails to preserve or produce evidence." *Id.* at 450 (*citing Vodusek v. Bayliner Marine*

*Corp.*, 71 F.3d 148, 155-56 (4th Cir. 1995); *NLRB v. Ford Radio & Mica Corp.*, 258 F.2d 457,

463 (2d Cir. 1958)).  This inference "'cannot be drawn merely from [the] negligent loss or

destruction of evidence; the inference requires a showing that the party knew the evidence was relevant to some issue at trial and that [her or] his willful conduct resulted in its loss or destruction.'" *Id.* (*quoting Vodusek*, 71 F.3d at 156).  A court must also find that "the evidence would have been relevant to an issue at trial and otherwise would naturally have been introduced into evidence." *Trigon Ins. Co. v. United States*, 204 F.R.D. 277, 286 (E.D. Va. 2001).  The moving party bears the burden of showing that "the adverse party had a duty to preserve the allegedly spoiled [evidence] and that the [evidence was] intentionally destroyed." *Id.*

     1.      **Surveillance Videotape**

     a.      **Duty to Preserve Evidence**

Haliburton argues that Food Lion had a duty to preserve the surveillance videotape because the Claims Notice Form suggests that Food Lion had a procedure for preserving surveillance videotapes after incidents.  Food Lion asserts that no videotape of Haliburton's accident exists.  Food Lion admits that its employee pulled a surveillance videotape he or she believed to cover the date of the incident, and mailed the videotape to Food Lion's third-party administrator, Risk Management Services, Inc.  The videotape mailed contained footage from January 23, 2005, rather than February 23, 2005, when the incident occurred.  Food Lion states that it does not have any February 23, 2005 videotape and that "it appears that the surveillance system in subject Food Lion[']s store was not *recording* during the *entire day* of February 23, 2005."[3]  (Def.'s Rebuttal Br. in Supp. of Mot. for Summ. J. 4.)

---

   [3] During argument, counsel for Food Lion proffered an explanation as to why the videotape did not exist.  The Court cannot consider the unverified proffer in a summary judgment evaluation.

### b.    Intentional or Bad Faith Conduct

Haliburton presents no evidence that Food Lion intentionally destroyed the videotape.  To the extent that Haliburton argues that the Court need not find intentional destruction in order to grant a spoliation of evidence instruction, she is wrong.  *See Hodge*, 360 F.3d at 450; *Vodusek*, 71 F.3d at 156 ("An adverse inference about a party's consciousness of the weakness of his case, however, cannot be drawn merely from his negligent loss or destruction of evidence . . . the inference requires a showing . . . that his willful conduct resulted in [the] loss or destruction."); *Trigon Ins. Co. v. United States*, 204 F.R.D. at 286 (finding that the moving party bears the burden of showing that "the adverse party had a duty to preserve the allegedly spoiled [evidence] and that the [evidence was] intentionally destroyed").  Although no videotape exists, the record is bereft of conduct suggesting intentional destruction of the videotape, had it existed.[4]

Therefore, Haliburton's argument that a jury could find that Food Lion destroyed the videotape because it showed something that was not beneficial to Food Lion fails.  No evidence exists that Food Lion intentionally destroyed the videotape.  Thus, the Court will not grant a spoliation of evidence instruction as to the videotape.

---

[4]It also appears that Haliburton cannot establish that any videotape would have proven when the spill occurred.  *See Stroupe v. Wal-Mart Stores East, L.P.*, Civil No. 3:07CV267, 2007 WL 3223224, at *1 (E.D. Va. Oct. 29, 2007) (refusing to grant an adverse inference instruction because the plaintiff could not show that the destroyed videotape captured the incident).  Although Food Lion concedes that the videotape would have captured Haliburton's fall, no evidence suggests that the spill occurred in such a way, or that the resolution of the videotape would have been sufficiently clear, to establish when the spill occurred.

### 2.    Photograph

Next, Haliburton argues that the Court should grant her a spoliation inference because

Food Lion failed to take a photograph of the scene of the incident after Haliburton left.   Food

Lion concedes that its employee violated its policy when it did not take the photograph.

An employee's failure to follow a store's policy does not imply bad faith or require a

spoliation inference against a defendant.  Even if it was in bad faith that Food Lion did not take

the photograph, Haliburton fails to show how this failure prejudices her.  *See Trigon*, 204 F.R.D.

at 286 ("The natural consequence of spoliation is that the moving party was prejudiced by the

destruction.").  Nothing in this record suggests that a photograph of the physical condition of a

spill would establish when the spill occurred.  *See Woods*, 2005 WL 2563178, at *3 (finding that

the physical condition of a spill failed to establish when the spill occurred).  Thus, the Court will

not grant a spoliation of evidence instruction as to the photograph.  Also, the record already

includes a description of the size and color of the spill.  *See* Claims Notice Form 3.  Therefore,

even if Haliburton had a photograph of the scene of the incident, she would still fail to show that

Food Lion had constructive notice of the spill.

### IV.  Conclusion

Food Lion did not have constructive notice of the spill because the appearance of the

foreign substance fails to establish when the spill occurred.  The record does not warrant

spoliation of evidence instructions as to the videotape and the photograph because Haliburton

cannot prove Food Lion acted in bad faith or that she is prejudiced.  Because she cannot establish

constructive notice and no fact exists for a jury to decide as to notice, Haliburton fails to establish

a prima facie case of premises liability.  Food Lion's Motion for Summary Judgment shall be

GRANTED.

For the foregoing reasons, the Court shall GRANT Food Lion's Motion for Summary

Judgment (Docket No. 23) and shall DISMISS the Complaint.

An appropriate order shall issue.

_____/s/_____

M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Entered: <u>April 21, 2008</u>